DONNA JOHNSON ET AL., APPELLEES, V. CITY OF HASTINGS,
NEBRASKA, A MUNICIPAL CORPORATION, APPELLANT.

488 N.W.2d 20

Filed August 21, 1992.    No. S-90-188.

Michael E. Sullivan, Hastings City Attorney, for appellant.

Kenneth H. Elson for appellee Southern Nebraska Rural Public Power District.

David G. Dales for appellee Nebraska Public Power District.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

This case is a consolidation of three actions challenging the annexation of a tract by the defendant, City of Hastings. The defendant appeals the district court's finding that the annexation was invalid. We affirm.

On October 28, 1988, the City of Hastings passed ordinance No. 3089, which annexed a saucepan-shaped tract of land extending eastward from the prior existing city limits. The tract of land is described by a single metes and bounds description. It includes a 120-foot-wide strip of U.S. Highway 6 and U.S. Highway 6 right-of-way—extending approximately three-quarters of a mile in length from the prior city limits eastward to the eastern edge of the Central Community College campus— and the Central Community College campus, including the segment of Highway 6 which abuts the campus to the north. The Central Community College campus constitutes the main body of the tract sought to be annexed. It is connected to the City of Hastings solely by the strip which includes Highway 6.

Actions challenging the annexation were filed in the district court for Adams County by Donna Johnson and Gary Duncan, by Southern Nebraska Rural Public Power District (Southern), and by Nebraska Public Power District (NPPD). Plaintiff NPPD specifically sought declaratory relief only, while

plaintiffs Johnson, Duncan, and Southern specifically sought injunctive relief against the city.

Plaintiffs Johnson and Duncan own farms within 2 miles of the territory sought to be annexed and, as a result, will be subject to the city's zoning authority, pursuant to Neb. Rev. Stat. § 16-901 (Reissue 1991), if the City of Hastings annexes the tract. Part of Southern's service area is within the annexed tract which covers Highway 6. In addition, Southern has facilities and power distribution lines within 2 miles of the area sought to be annexed. Southern serves large retail customers in the area east of the city limits of Hastings, with the exception of the area served by the City of Hastings. NPPD, also a public electric utility company, serves the customers within the annexed area.

The implications of the annexation are an increase in taxes for Johnson and Duncan, a loss of NPPD's distribution facilities and services for the Central Community College campus to the City of Hastings, and a loss of retail customers and revenue for Southern to the City of Hastings in the area surrounding Central Community College. The three cases were consolidated for trial in the district court for Adams County and tried on December 12 and 13, 1989.

The Hastings City Council, in enacting ordinance No. 3089, made a specific finding that the entire annexed area was urban and suburban in character, and contiguous and adjacent to the corporate limits of the city. Apparently relying on our holding in *Piester v. City of North Platte*, 198 Neb. 220, 223, 252 N.W.2d 159, 161 (1977), that "the character of a segment of an Interstate Highway sought to be annexed is to be determined from the areas immediately adjacent to the annexed portion," the parties focused during trial on the issue of whether the land adjacent to Highway 6 is rural or urban in character. A detailed description of the land surrounding Highway 6 need not be recited, since we do not decide the case on the issue of whether that portion of Highway 6 is urban or rural in nature.

On January 22, 1990, the trial court made the following findings and orders: "1. Specifically finds that the land adjacent to the segment of Highway 6 sought to be annexed by the defendant is agricultural land, rural in character. 2. Further

finds that as a consequence thereof, the annexation was improper and Ordinance No. 3089 is null and void." In addition, the court found that plaintiffs Johnson, Duncan, and Southern were without an adequate remedy at law and therefore enjoined the City of Hastings from enforcing its ordinance.

The city filed a motion for new trial, which was overruled by the district court.

The city timely appealed to this court and assigned that the district court erred in (1) determining that the land adjacent to the segment of Highway 6 sought to be annexed by the city is agricultural land, rural in character; (2) failing to find that all of the territory annexed by ordinance No. 3089 is urban or suburban in character; (3) finding that the plaintiffs have met their burden of proof; (4) finding that plaintiff Southern had sufficient standing to be a party in this action; (5) refusing to admit and consider evidence of the highest and best use of certain property; and (6) declaring the entire ordinance No. 3089 void, when annexation of at least one of the tracts covered by the ordinance was legally valid.

> On appeal from the district court to an appellate court, an equity case is tried as to factual issues de novo on the record, requiring the appellate court to reach a conclusion independent of the findings of the trial court. . . . However, when credible evidence conflicts, the appellate court may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another.

(Citation omitted.) *Dowd v. Bd. of Equal.*, 240 Neb. 437, 439, 482 N.W.2d 583, 585 (1992).

Hastings is considered a city of the first class. Neb. Rev. Stat. § 16-101 (Reissue 1991). Neb. Rev. Stat. § 16-117 (Reissue 1987), which grants cities of the first class the power to extend the city limits, states:

> The corporate limits of a city of the first class shall remain as before, and the mayor and council may by ordinance, except as provided in sections 13-1111 to 13-1118, and amendments thereto, at any time, include within the corporate limits of such city any contiguous or

adjacent lands, lots, tracts, streets, or highways as are urban or suburban in character, and in such direction as may be deemed proper. Such grant of power shall not be construed as conferring power upon the mayor and council to extend the limits of a city of the first class over any agricultural lands which are rural in character.

"The annexation of land to cities and towns is a legislative function and it is for their governing bodies to determine the facts which authorize the exercise of the power granted." *Plumfield Nurseries, Inc. v. Dodge County*, 184 Neb. 346, 351, 167 N.W.2d 560, 563 (1969). However, "[a] municipal corporation has no power to extend or change its boundaries otherwise than provided by constitutional enactment or as it is empowered by the Legislature by statute to do." *Doolittle v. County of Lincoln*, 191 Neb. 159, 161, 214 N.W.2d 248, 250 (1974). Accord, *Village of Niobrara v. Tichy*, 158 Neb. 517, 63 N.W.2d 867 (1954); *Wagner v. City of Omaha*, 156 Neb. 163, 55 N.W.2d 490 (1952). The power delegated to municipal corporations to annex territory must be exercised in strict accord with the statute conferring it. *Doolittle v. County of Lincoln, supra*; *Village of Niobrara v. Tichy, supra*; *Wagner v. City of Omaha, supra*.

The power of a municipality to annex territory is, under the specific provisions of § 16-117, limited to annexing contiguous or adjacent land if it is urban or suburban in character and not agricultural land that is rural in character.

" 'The burden is on one who attacks an ordinance, valid on its face and enacted under lawful authority, to prove facts to establish its invalidity.' " *Bierschenk v. City of Omaha*, 178 Neb. 715, 718, 135 N.W.2d 12, 14 (1965).

The terms "contiguous" and "adjacent" are used synonymously and interchangeably. *Tichy, supra*. If the territory sought to be annexed is not contiguous to the municipality, the proceedings are without legal effect. *Id.*

As to territorial extent, the idea of a city is one of unity, not of plurality; of compactness or contiguity, not separation or segregation. *Id.* This court recognized in *Tichy* that contiguity means that the two connecting boundaries should be *substantially* adjacent:

> It has been determined by this court that the word adjacent in this statute means contiguous or coexistent. In *Jones v. City of Chadron*, 156 Neb. 150, 55 N.W.2d 495, it is said: "It is indispensable that the petition in this kind of a proceeding should show by statement of fact that the territory sought to be detached is within the municipality and *that a substantial part of the boundary thereof is adjacent to a segment of the boundary of the city or village.* Adjacent as used in this statute means contiguous **or** coexistent with."

(Emphasis supplied.) *Tichy*, 158 Neb. at 521, 63 N.W.2d at 870-71. The court concluded that the territory sought to be annexed was not contiguous with the village and that no part of its boundary was coexistent with any part of the boundary of the village.

Subsequently, in *Bierschenk v. City of Omaha, supra*, this court had to decide whether the city of Omaha, a metropolitan city, could annex a piece of land with irregular boundaries and a narrow neck which connected it to the city. The plaintiffs argued, based on *Tichy, supra*, that the trial court erred in finding that the land annexed was sufficiently connected to or contiguous with the city limits to permit its annexation. This court quoted Neb. Rev. Stat. § 14-117 (Reissue 1991), the annexation statute pertaining to cities of the metropolitan class, to show that this statute does not mention the term "contiguous." This court concluded, therefore, that the *Tichy* case did not apply, and found the annexation valid because the area sought to be annexed was not agricultural and rural in nature.

The case before us is similar to *Witham v. City of Lincoln*, 125 Neb. 366, 250 N.W. 247 (1933), where the city of Lincoln had extended the city limits from 58th Street to 70th Street. The annexed area included a narrow piece of land which ran along O Street to 70th Street and extended only 400 feet on either side of O Street. Plaintiff's farm, which was included in the annexation, was located at the extreme east end of the annexed strip, on the north side of O Street. One of the purposes of the annexation was to build a waterline in east O Street, to the Veterans' Hospital. In striking down the ordinance authorizing

the annexation, this court said:

> We are constrained to hold that the city exceeded its power when it annexed a narrow strip of plaintiff's land, reaching out like a finger, along the exact location of an 8-inch water-main required to be constructed to the Veterans' Hospital, and that such annexation of such farm land was wrongful and without authority . . . .

*Id.* at 373, 250 N.W. at 250. Similarly, in this case, the City of Hastings is reaching out like a finger, along Highway 6, a 120-foot-wide strip, to the college campus. This fact was admitted by Orval Stahr, the city's planning consultant, during the following cross-examination:

> Q. . . . . So what we are saying here is that in order to try to get this community college area to be contiguous, the city simply used a 120-foot, approximately, wide strip of a half a mile of highway to try to accomplish that?
>
> A. In connection with the policy that we formulated, that's correct.

We hold that as to territorial extent, the idea of a city is one of unity, not of plurality; of compactness or contiguity, not separation or segregation. See *Tichy, supra.* The requirement of contiguity has not been achieved in this case, since the boundary of the area sought to be annexed is not substantially adjacent to the boundary of the city. *Id.*

The appellant argues that *Tichy* has been superseded by Neb. Rev. Stat. § 16-118 (Reissue 1991), which states: "Lands, lots, tracts, streets, or highways shall be deemed contiguous although a stream, embankment, strip, or parcel of land not more than two hundred feet wide lies between the same and the corporate limits." We disagree and find that this statute merely supplements *Tichy.* The statute defines the term "contiguous" and applies to a situation where the city limits and the land sought to be annexed are separated by a strip of land no more than 200 feet wide. Section 16-118 is not applicable to this case. The statute implies a situation where a strip of land is located parallel to the city limits, which is not the case here. See 2 Eugene McQuillin, The Law of Municipal Corporations § 7.20.30 (3d ed. 1988):

> As applied to annexation of streets or roads projecting

beyond the limits of a municipality, "contiguous" has been construed to mean contiguous in the sense of adjacent and parallel to the existing municipal limits. Accordingly, the annexation of a portion of a highway extending beyond the border of a municipality, connected only by the width of the highway as it adjoined the municipal boundary, has been held an invalid "strip" or "corridor" annexation. . . .

Counsel for the City of Hastings explained the tract's odd shape during his oral argument, by stating that the city could not annex a tract of land adjacent to Highway 6 because it contains "County Industrial Area."

According to § 16-117, cities of the first class may annex land, except as provided in Neb. Rev. Stat. §§ 13-1111 to 13-1118 (Reissue 1991). Section 13-1115 provides:

Upon designation of such tract as an industrial area [it] shall thereupon be used or reserved for the location of industry. . . . *If such tract has an actual valuation of more than two hundred eighty-six thousand dollars, it shall not be subject to inclusion within the boundaries of any incorporated city of the first . . . class . . .* except that such tract regardless of actual valuation may be annexed if (1) it is located in a county with a population in excess of one hundred thousand persons and the city . . . did not approve the original designation of such tract as an industrial area pursuant to section 13-1112, (2) the annexation is stipulated in the terms and conditions agreed upon between the county and the city . . . in any agreement entered into pursuant to section 13-1112, or (3) the owners of a majority in value of the property in such tract as shown upon the last preceding county assessment roll consent to such inclusion in writing or petition the city council or village board to annex such area.

(Emphasis supplied.) First of all, it is not clear from the record whether the tract adjacent to Highway 6 is county industrial area. The City of Hastings relies in its argument on the testimony of a Mr. Haussler, the executive director of the Hastings Economic Development Corporation, and a Mr. Wacker, city engineer and director of public works. Haussler

made the following statement in reference to this particular tract of land: "Those two particular properties are designated industrial areas by the county. I do believe that they are zoned — Well, our current Hastings Zoning Map shows that as agricultural. I don't know that that is accurate. It seems to me that that is not accurate." Wacker described the tract of land as follows: "I believe it is in the industrial — county industrial area. I would say it is in an industrial zoning." We find this testimony not persuasive as to whether the tract of land adjacent to Highway 6 is county industrial area.

Second, even if the testimony was conclusive, the record does not indicate whether the value of the land exceeded $286,000, nor does it address any of the other statutory conditions. In substance, the record does not give us enough facts to decide whether § 13-1115 precluded the annexation of the area adjacent to Highway 6, which, if it did, could provide an excuse for the strip annexation in this case. Since we hold that the territory sought to be annexed is not sufficiently adjacent to the corporate limits of the City of Hastings, we need not determine whether the land surrounding Highway 6 is urban or agricultural in nature. The last assignment of error which will therefore be addressed is whether the trial court erred in finding that plaintiff Southern had sufficient standing to be a party to this action.

The appellant argues that Southern has no personal, pecuniary, or legal interest in this action. The city contends that none of Southern's facilities are affected by the ordinance and that Southern has no customers in the annexed area. Southern argues that it has transmission lines and other electrical facilities installed within 2 miles of the area sought to be annexed. Southern refers in its brief to Neb. Rev. Stat. § 16-901 (Reissue 1991), which provides in part:

Any city of the first class may apply by ordinance any existing or future zoning regulations, property use regulations, building ordinances, *electrical ordinances*, plumbing ordinances, and ordinances authorized by section 16-240 to the unincorporated area two miles beyond and adjacent to its corporate boundaries with the same force and effect as if such outlying area were within

the corporate limits of such city . . . .
(Emphasis supplied.) Southern claims that this statute will subject it to whatever electrical ordinances the appellant may enact. The appellant argues that the electrical ordinances will have no bearing on the facilities of Southern, even though they may extend into the 2-mile extraterritorial jurisdiction and that the city's electrical regulations are identical to those of the State of Nebraska.

The issue of Southern's standing is rendered superfluous by the fact that this court considers the annexation invalid and will grant plaintiffs Johnson and Duncan an injunction against the City of Hastings. However, an analysis of Nebraska law on this issue shows that Southern, contrary to appellant's arguments, has standing in this case.

In *Sullivan v. City of Omaha*, 183 Neb. 511, 162 N.W.2d 227 (1968), the court held that the appellants who did not live in or own property in any portion of the area annexed had standing to challenge the annexation ordinance because their property was located within the 3-mile zoning area of the city after the annexation. The court held that the 3-mile limit of the city of Omaha over the appellants' land subjected their property to the regulatory power of the city in several particulars, which created a personal, pecuniary, and legal interest in the annexation ordinance. The *Sullivan* court concluded that the enumeration of real parties in *Wagner v. City of Omaha*, 156 Neb. 163, 55 N.W.2d 490 (1952), is not exclusive and that "[w]here a person has a personal, pecuniary, and legal interest which is adversely affected by an annexation ordinance, he has standing to contest the validity of the ordinance." *Sullivan*, 183 Neb. at 513, 162 N.W.2d at 229.

The appellant concedes that *Sullivan* solves the standing issue in favor of plaintiffs Johnson and Duncan, who own farms within the 2-mile zoning area of the city after annexation. We do not see why plaintiff Southern, which owns facilities within the 2-mile zoning area, should have no standing, since its property is also subject to the city's regulatory power.

In addition, Charles Hoke, general manager for Southern, testified that the area from the center of Highway 6 to the highway right-of-way on the north side will be taken out of

Southern's service area if the annexation is considered to be valid. This fact alone indicates that Southern has a personal, pecuniary, and legal interest which is adversely affected by the annexation.

Since the boundaries of the tract sought to be annexed are not sufficiently adjacent to the corporate limits of the City of Hastings, the annexation was improper and ordinance No. 3089 is null and void. The judgment of the district court is affirmed, and the City of Hastings is enjoined from enforcing its ordinance.

AFFIRMED.